**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: DELOITTE & TOUCHE OVERTIME LITIGATION | No. 11 Civ. 2461 (RMB)(KNF) |
| SANA ZARA BUKHARI, MEGAN FAYE COWELL, JANE KILLIAN, and HENRY CONTRERAS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>Deloitte & Touche LLP and Deloitte LLP, a limited liability partnership,<br><br>Defendants. | No. 12 Civ. 4290 (RMB)(KNF) |
| STEPHEN BERNDT, individually and on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br>v.<br>Deloitte & Touche LLP and Deloitte LLP,<br><br>Defendants. | No. 13 Civ. 0644 (RMB)(KNF) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' UNOPPOSED MOTION FOR ENTRY OF THE PROPOSED ORDER TO APPROVE THE PARTIES' SETTLEMENT AND TO DECERTIFY THE CONDITIONALLY CERTIFIED COLLECTIVE ACTION**

Dated: New York, New York
July 31, 2015

*Of Counsel:*

Peter A. Walker
Christopher H. Lowe
Lori M. Meyers

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

PROCEDURAL BACKGROUND.................................................................................. 2

ARGUMENT ............................................................................................................... 4

I. Defendants Request that the Collective be Decertified Because the Named Plaintiffs and the Opt-In Plaintiffs Are Not Similarly Situated ............................. 4

(1) The Individual Plaintiffs Have Disparate Factual and Employment Settings............................................................................................. 6

(2) Defendants' Defenses to the Claims of the Class Members Are Individualized ................................................................................... 7

(3) Fairness and Procedural Considerations Counsel Against Class Treatment ......................................................................................... 9

II. The Parties' Settlement Agreement Should Be Approved .................................... 9

III. Decertification and Settlement Will Not Prejudice the Opt-In Plaintiffs ............. 11

CONCLUSION........................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brady v. Deloitte & Touche LLP*,
587 F. App'x 363 (9th Cir. 2014) ....................................4, 5

*Guzman v. VLM, Inc.*,
No. 07–cv–1126, 2007 WL 2994278 (E.D.N.Y. Oct. 11, 2007) ....................................6

*Hernandez v. Fresh Diet, Inc.*,
No. 12-cv-4339, 2014 WL 5039431 (S.D.N.Y. Sept. 29, 2014) ....................................6

*Laroque v. Domino's Pizza, LLC*,
557 F. Supp. 2d 346 (E.D.N.Y. 2008) ....................................6

*Miranda v. O'Reilly Automotive Stores, Inc.*,
No. 2:14-cv-00878, 2014 WL 4231372 (D. Nev. Aug. 26, 2014)....................................8

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010)....................................5

*Pippins* v. *KPMG, LLP*,
759 F.3d 235 (2d Cir. 2014).................................... *passim*

*Tracy v. NVR, Inc.*,
293 F.R.D. 395 (W.D.N.Y. 2013)....................................6

*Wal-Mart, Inc. v. Dukes*,
131 S. Ct. 2541 (2011)....................................9

**STATUTES**

43 Pa. Cons. Stat. Ann. § 260.9a ....................................8

FLSA.................................... *passim*

Mass. Gen. Laws Ann. 151 § 20A....................................8

Minn. Stat. Ann. § 541.07....................................8

N.Y. Lab. Law § 198 ....................................8

Ohio Rev. Code Ann. § 2305.11....................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. Rule 23 ....................................3, 4

29 U.S.C. §§ 255, 256....................................................................................................................8

Defendants Deloitte & Touche LLP and Deloitte LLP (collectively, "Defendants"), by their counsel, submit this Memorandum of Law in Support of their Unopposed Motion for Entry of the Proposed Order to Approve the Settlement in this Action and to Decertify the Conditionally Certified Collective Action[1]. On April 3, 2015, Plaintiffs represented to Defendants that they do not oppose this motion.

## INTRODUCTION

Because there is no substantive or procedural basis to continue this case, it should be dismissed pursuant to the terms of the Parties' settlement, as set forth in the Proposed Order. Substantively, the issue here is whether the Named Plaintiffs (Dina Gersten, Jason James, Sana Zara Bukhari, Megan Faye Cowell, Jane Killian, Henry Contreras and Stephen Berndt) and the Opt-In Plaintiffs[2], who worked for Deloitte & Touche LLP as unlicensed Audit Assistants, Audit Senior Assistants, Audit In-Charges and Audit Seniors performed duties that qualified them as exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA) and the wage and hour laws in New York, Pennsylvania, Massachusetts, Ohio, Minnesota and Nevada -- an issue that has now been conclusively decided with respect to the FLSA by the Second Circuit Court of Appeals. *Pippins* v. *KPMG, LLP*, 759 F.3d 235 (2d Cir. 2014). In *Pippins,* the Second Circuit held that entry-level accountants at KPMG (who are hired into virtually the same roles as their counterparts at Deloitte & Touche LLP, and are similarly assigned to perform various functions associated with auditing the financial statements of public and private companies are "learned

---

[1] This Action shall mean *In re Deloitte & Touche LLP Overtime Litigation*, with Master File No. 11 civ. 2461 (RMB)(THK), pending in the United States District Court for the Southern District of New York, as well as its predecessor and consolidated cases: *Gersten v. Deloitte & Touche LLP and Deloitte LLP,* 11-cv-2461 (RMB) (S.D.N.Y.); *James v. Deloitte & Touche LLP*, 11-CV-2027 (MEJ) (N.D.Ca.); *Bukhari, Cowell, Killian and Contreras v. Deloitte & Touche LLP and Deloitte LLP*, 12-cv-04290 (PAE) (S.D.N.Y.); and *Berndt v. Deloitte & Touche LLP and Deloitte LLP*, 12-cv-02157(LDD)(E.D.Pa.). Plaintiffs join in Defendants' request that the Court approve the Proposed Order to Approve the Settlement of this Action.

[2] The Opt-In Plaintiffs are individuals who filed a consent to join the Action and have not withdrawn such consent.

professionals" exempt from overtime pay requirements under the FLSA. In light of *Pippins*, the case should not continue at all.

Furthermore, in order to proceed with a collective action, the Named Plaintiffs must prove by a preponderance of evidence that they and the Opt-In Plaintiffs are "similarly situated." Discovery has revealed that the Named Plaintiffs cannot carry this burden and that the case should not proceed further on a collective basis.

For these reasons and those articulated below, Defendants request that this Court enter the attached proposed Order decertifying the conditionally-certified collective action, and approving the settlement that dismisses the Named Plaintiffs with prejudice and dismisses the Opt-In Plaintiffs without prejudice to them subsequently filing individual actions on federal claims in the United States District Court for the Southern District of New York as related cases to the one at bar or, if there is no federal claim, in such courts wherever venue is otherwise appropriate, within sixty (60) calendar days of the mailing of the Court-approved Notice.

## PROCEDURAL BACKGROUND

On April 11, 2011, Plaintiff Dina Gersten commenced suit in *Gersten v. Deloitte & Touche LLP and Deloitte LLP* in the United States District Court for the Southern District of New York seeking overtime premium pay and other damages on behalf of unlicensed auditors under the FLSA and New York State law. (ECF No.1). On April 26, 2011, Plaintiff Jason James commenced suit in *James v. Deloitte & Touche LLP* in the United States District Court for the Northern District of California on behalf of unlicensed auditors seeking overtime premium pay and other damages under the FLSA. On November 22, 2011, the Court consolidated the separately filed actions of *Gersten v. Deloitte & Touche LLP and Deloitte LLP* and *James v. Deloitte & Touche LLP* into *In re Deloitte & Touche LLP Overtime Litigation*, with Master file No. 11 civ. 2461 (RMB)(THK) (ECF No. 56).

On January 17, 2013, the Court consolidated the separately filed action of *Bukhari, Cowell and Killian v. Deloitte & Touche LLP and Deloitte LLP* seeking overtime premium pay and other damages under Massachusetts, Minnesota and Ohio law into the *In re Deloitte & Touche LLP Overtime Litigation* and permitted Plaintiffs to file an amended Complaint to add Henry Contreras as a named Plaintiff and to add claims under Nevada law. (Bukhari ECF Nos. 33-34). On January 30, 2013, the Court consolidated the separately filed action of *Berndt v. Deloitte & Touche LLP and Deloitte LLP* seeking overtime premium pay and other damages under Pennsylvania law into *In re Deloitte & Touche LLP Overtime Litigation* (ECF No. 180).

Thus, in this consolidated litigation (the "Litigation") Plaintiffs alleged that Deloitte & Touche LLP and Deloitte LLP failed to pay unlicensed Audit Assistants, Audit Senior Assistants, Audit In-Charges, and Audit Seniors overtime pay in compliance with the FLSA and various state laws. The Defendants denied Plaintiffs' allegations and asserted that they and the putative class members were not entitled to damages or any other form of relief. This Court did not rule on the merits of Plaintiffs' claims or the Defendants' defenses, but, on December 16, 2011, conditionally certified a class of current and former unlicensed Audit Assistants, Audit Senior Assistants, Audit In-Charges and Audit Seniors employed by Deloitte to perform audits in the United States at any time since April 11, 2008 who consent to join the Litigation during the class opt-in period (the "Opt-In Plaintiffs") (ECF No. 64).[3]

Pursuant to that decision, current and former Audit Assistants, Audit Senior Assistants, Audit In-Charges, and Audit Seniors received Court-approved Notice of this Litigation and one thousand three hundred and forty five (1345) chose to opt-in. By completing the Consent to Join, the Opt-In Plaintiffs submitted to the jurisdiction of this Court and further agreed to

[3] There have been no proceedings pursuant to Rule 23 of the Federal Rules of Civil Procedure and there are no certified classes under any applicable state law.

representation by Outten & Golden LLP and Folkenflik & McGerity and authorized those firms to "make decisions on my behalf concerning the litigation and settlement." (*see e.g.* ECF No. 76). The Opt-In Plaintiffs also "agree[d] to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable. *Id.*

The Parties have conducted extensive discovery in this matter, including, but not limited to, taking depositions of the Named Plaintiffs, numerous Opt-In Plaintiffs and Deloitte representatives; issuing third-party subpoenas; responding to written discovery, obtaining and producing a host of sworn declarations and producing millions of pages of documents. The voluminous evidence adduced through discovery revealed that there were substantial differences among the Plaintiffs and Opt-In Plaintiffs in terms of their actual duties and employment with Deloitte & Touche LLP, and consequently, the exemptions for which they would qualify. Based on the facts and circumstances of the case, decertification of the class is appropriate and should be ordered. At the same time, the Parties recognized the precedent set by the Second Circuit in *Pippins* and agreed to settle this action.

For the reasons detailed below and in the proposed Order, this Court should decertify the conditionally-certified class, approve the Parties' settlement, enter the proposed Order and authorize the mailing of Court-approved Notice of Decertification and Settlement to the Opt-In Plaintiffs. Plaintiffs do not oppose this motion.

## ARGUMENT

### I. Defendants Request that the Collective be Decertified Because the Named Plaintiffs and the Opt-In Plaintiffs Are Not Similarly Situated

On October 9, 2014 in *Brady v. Deloitte & Touche LLP*, 587 F. App'x 363 (9th Cir. 2014) (summary order), the Ninth Circuit Court of Appeals issued a memorandum decision upholding the district court's decertification of a Rule 23 class action involving four identical

positions to those that are at issue here -- unlicensed Audit Assistants, Audit Senior Assistants, Audit In-Charges and Audit Seniors. The central issue in that case was whether unlicensed auditors were exempt from California wage and hour laws by virtue of the Professional and/or the Administrative Exemptions. In upholding the District Court's decertification order, the Ninth Circuit noted that Deloitte proffered evidence that the level of discretion afforded to unlicensed accountants varied drastically from assignment to assignment; that some of the unlicensed accountants were primarily assigned to work involving management policies or general business operations; and that individual inquiries were involved in determining whether either the Professional or Administrative Exemptions applied. Since this Court considered the Northern District of California's 2010 decision granting certification in *Brady* in reaching its conclusion that conditional certification was appropriate in the instant action (ECF No. 64, p. 5), it should now look to the Courts' most recent conclusions in *Brady* and rely on the lower court's decision to decertify the class, as well as the Ninth Circuit Court of Appeals' decision upholding that decertification.

Unlike when petitioning for conditional certification, the plaintiff's burden in opposing a motion for decertification is significant. The Court must apply heightened scrutiny in determining whether Plaintiffs are similarly situated for the purposes of the FLSA based on all of the facts uncovered through the course of discovery. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) ("At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.").

Although the Second Circuit has not established standards for determining whether proposed collective action members are similarly situated, district courts in this Circuit generally

consider the "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against [collective action treatment]." *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008) (quoting *Guzman v. VLM, Inc.*, No. 07–cv–1126, 2007 WL 2994278, at *3 (E.D.N.Y. Oct. 11, 2007)); *see also Hernandez v. Fresh Diet, Inc.*, No. 12-cv-4339, 2014 WL 5039431, at *3 (S.D.N.Y. Sept. 29, 2014) and *Tracy v. NVR, Inc.*, 293 F.R.D. 395, 397 (W.D.N.Y. 2013). Utilizing this three-prong test, it is clear that this lawsuit can no longer proceed as a collective action.

***(1) The Individual Plaintiffs Have Disparate Factual and Employment Settings***

Discovery has revealed that the Named Plaintiffs and the Opt-In Plaintiffs are not similarly situated because their duties, the level of managerial and supervisory responsibility and discretion they exercised, and the hours they allegedly worked varied widely. The Named Plaintiffs and Opt-Ins only have personal knowledge as to their own experiences, cannot attest to what other employees did with their time; received assignments based on their own competencies, proficiencies and experience level; worked in different industries (with different auditing requirements); and performed different tasks based on the composition of the engagement teams (i.e. size and staffing of team). For those employees who worked in different Deloitte & Touche LLP offices, they have testified that the individual offices where they worked functioned differently, which resulted in varying levels of supervision and differing responsibilities.

Some employees worked with staff in India while others did not. Some employees participated in recruiting events on behalf of Deloitte & Touche LLP, while others did not. Some employees performed internal audits, others performed external audits and still others

performed both types of audits. Some employees audited private companies, others audited public companies and still others audited both private and public companies.

Since staff progressed at dramatically different rates based on their abilities, academic background, previous life or work experiences and experience with the organization, some Audit Senior Assistants functioned as Audit Seniors on certain engagements, while performing within their title on other engagements. (*See* Declaration of Peter A. Walker dated July 31, 2015 ("Walker Dec.") Exhibits A at 84:19-85:5, B at 173:6-19, 176:2-13, C at 11:20-25, and D at 84:7-10.) Certain Audit Senior Assistants supervised the work of Audit Assistants. (Walker Dec. at Exhibits B at 180:2-15, C at 11:20-25, and E at 122:22-125:6.) Audit Seniors and Audit In-Charges assigned work to and corrected the work of less senior staff. (Walker Dec. at Exhibits B at 120:2-9, 121:8-12, G at 48:13-50:8 and J at 100:16-102:4.) To a person, each Senior who passed the CPA exam and obtained his/her license testified that his/her work did not change in any way after he/she became licensed. (Walker Dec. at Exhibits H at 138:22-139:2, I at 127:13-18, and J at 28:13-15.) Deloitte did not make assignment decisions based on whether an individual possessed a CPA license. (Walker Dec. at Exhibits C at 12:4-14, 13:4-1, G at 143:17-144:9 and K at 259:5-14.)

***(2) Defendants' Defenses to the Claims of the Class Members Are Individualized***

Likewise, Defendants' individualized defenses to the claims of the Named Plaintiffs and the Opt-Ins Plaintiffs would make a collective action trial unmanageable and would result in over 1000 mini-trials. The defenses to the instant claims include the professional and administrative exemptions or a combination of the two. The determination of these exemption defenses depends upon the duties that each Named and Opt-In Plaintiff performed and the degree of autonomy each one had in performing them. Both of these factors clearly varied from one

Plaintiff or Opt-In to the next and even for each Plaintiff depending on his/her particular engagement.

Further militating against collective action is the individualized nature of the statute of limitations defense. A two-year statute of limitations applies to any proven claims under the FLSA unless plaintiffs can prove that the defendants acted willfully in violating the FLSA. 29 U.S.C. §§ 255, 256. Whether two or three years in length, the statute of limitations continues to run on each individual's claim until that individual affirmatively opts into the lawsuit by filing a consent to join. *Id.* at § 216(b). Accordingly, the date each Plaintiff and Opt-In Plaintiff joined this lawsuit and the dates each was employed must be determined to know if each could even potentially recover under the FLSA. The issue of willfulness would also have to be determined to know if a two- or three-year statute of limitations would apply to an individual's FLSA claim. When the state law claims are added into the mix with the six-year statute under New York law (N.Y. Lab. Law § 198), the two-year statute under Ohio law (Ohio Rev. Code Ann. § 2305.11), the two-year statute under Massachusetts law, which increased to three years on November 18, 2014 (Mass. Gen. Laws Ann. 151 § 20A), the three-year statute under Minnesota law (Minn. Stat. Ann. § 541.07), the three-year statute under Pennsylvania law (43 Pa. Cons. Stat. Ann. § 260.9a.), and the fact that there is not even a private right of action under Nevada law for overtime (*see Miranda v. O'Reilly Automotive Stores, Inc.*, No. 2:14-cv-00878, 2014 WL 4231372, at *6 (D. Nev. Aug. 26, 2014), the analysis becomes even more individualized. To determine which of the 1345 Opt-In claims are time barred, such evidence would have to be gathered and assessed as to every Plaintiff and Opt-In on an individualized basis. Each Plaintiff and Opt-In would be required to make not only a substantive showing, but also one demonstrating that his/her claim is within the applicable federal and state statutes of limitation.

As with Defendants' other defenses, this makes the statute of limitations too individualized to be determined on a collective basis.

***(3) Fairness and Procedural Considerations Counsel Against Class Treatment***

Based on the above, it is evident that a morass of mini-trials would be required to adjudicate Plaintiffs' and the Opt-In Plaintiffs' claims and Defendants' defenses to those claims while also protecting Defendants' due process rights. See *Wal-Mart, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011) (explaining that "a class cannot be certified on the premise that [a defendant] will not be entitled to litigate its statutory defenses to individual claims"). Accordingly, this case cannot be fairly or efficiently adjudicated in a manageable way on a collective basis.

## II. The Parties' Settlement Agreement Should Be Approved

While the Parties have vigorously litigated whether unlicensed accountants are exempt administrators or professionals under the FLSA, the Second Circuit's landmark decision in *Pippins* has ended that debate. In *Pippins*, the Second Circuit explicitly determined that junior accountants at one of the big four accounting firms (of which Deloitte & Touche LLP is one), qualify for the learned professional exemption based on the facts that they received specialized education as accountants, were designated as accountants by their employer, performed entry-level accounting work, and were automatically promoted to a more senior accounting position after two years of satisfactory employment.

In analyzing the FLSA's professional exemption, which requires that an employee's main or most important duty be the performance of "work requiring an advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction," the Court relied on the three prong test in the implementing regulations. To determine whether an employee's primary duty qualifies for the learned professional exemption, the work must be: 1) predominantly intellectual in character, requiring the consistent exercise of

discretion and judgment; 2) in a field of science or learning (such as accounting), and 3) of a type where specialized academic training is a standard prerequisite for entrance into the profession. Because in *Pippins* there was no dispute that plaintiffs were accountants working in a field of science or learning, the Court's analysis focused on the remainder of the test.

Notably, the Second Circuit found that "what matters is whether [employees] exercise intellectual judgment within the domain of their particular expertise," finding the "critical question" to be whether "workers act in a manner that reflects knowledge and requires judgments characteristic of a worker practicing that particular profession." 759 F.3d at 241, 245, 247. The Court also observed that employees may also "exercise professional judgment when their discretion in performing core duties is constrained by formal guidelines or when ultimate judgment is deferred to higher authorities." *Id.* at 243. Indeed, supervision of junior professionals by their more experienced and senior colleagues is standard operating procedure in many offices and "does not relegate the junior professionals to the role [] of non-professional staff," especially where the junior employees use professional judgment in determining when to elevate an issue to a supervisor and/or when ask for help. *Id.* at 248.

In addition, to qualify for the professional exemption employees must also employ advanced knowledge "customarily acquired by a prolonged course of specialized intellectual instruction." In exploring the parameters of this so-called "education" requirement, the Second Circuit determined the education requirement is likely met by a few years of relevant training so long as that training is specialized to the job or profession at issue. *Id.* at 238. (In contrast, generic education requirements, such as a bachelor's degree in any field, e.g., generally do not meet the requirement.) The Court then summarily rejected plaintiffs' argument that they did not meet the education requirement because they learned all necessary skills while on-the-job,

finding that KPMG's "training" materials would not be understandable to "the average classics or biochemistry major" nor could non-accountants "develop the requisite understanding of the audit function, on the basis of the brief training period." *Id.* at 251.

Because these same facts are present in the case at bar, the Parties have agreed to settle this litigation with prejudice as to the Named Plaintiffs and without Prejudice as to the Opt-In Plaintiffs. As part of the settlement, Deloitte has agreed to seek neither its costs, totaling well in excess of a quarter of a million dollars, in the consolidated action, nor its even more substantial legal fees. (*See* Walker Dec. at Exhibit L.)

## III. <u>Decertification and Settlement Will Not Prejudice the Opt-In Plaintiffs</u>

Given the advanced posture of this case and the resources expended to date, and recognizing the discretion of the Court to fashion an appropriate dismissal, it is respectfully requested that this Court enter the attached Proposed Order decertifying the collective action and imposing certain other conditions that the parties have negotiated and believe are appropriate to protect both Defendants and the Opt-In Plaintiffs from unfair prejudice in the decertification and settlement of this action. (*See* Walker Dec. at Exhibit M.)

Decertification will not prejudice the Opt-In Plaintiffs who may have rights to separately pursue potential FLSA claims and other state claims. Although the claims of the Opt-In Plaintiffs will be dismissed without prejudice, to safeguard their rights, the Parties have agreed to permit them sixty (60) calendar days following the date of mailing of the Notice of Decertification and Settlement to file an individual FLSA claim in the United States District Court for the Southern District of New York as a related case to the one at bar or; if there is no federal claim asserted, to file a suit in an appropriate court. (*See* Walker Dec. at Exhibits N and O.)

With respect to the settlement, the precedent-setting *Pippins* decision from the Second Circuit Court of Appeals has resolved the ultimate issue before this Court -- namely that unlicensed Audit Assistants, Audit Senior Assistants, Audit In-Charges and Audit Seniors are exempt as learned professionals under the FLSA. Accordingly, the settlement is fair and reasonable and should be approved by this Court.

## **CONCLUSION**

The evidence demonstrates that this case cannot proceed on a collective basis because Plaintiffs' and the Opt-In Plaintiffs' day-to-day duties and experiences varied so widely that they are not "similarly situated" and because the defenses to their claims are too individualized to permit the case to proceed collectively in an efficient and manageable manner. Further, there is no dispute that, pursuant to *Pippins*, the current and former unlicensed Audit Assistants, Audit Senior Assistants, Audit In-Charges and Audit Seniors are "learned professionals" exempt from the FLSA's overtime requirements. For these reasons, this Court should enter the attached proposed Order, decertifying the conditionally-certified class, approving the Parties' settlement and authorizing the distribution of notice of decertification and settlement to the Opt-In Plaintiffs.

DATED: New York, New York
July 31, 2015

Respectfully submitted,

SEYFARTH SHAW LLP

By: /s Peter A. Walker

Peter A. Walker
620 Eighth Avenue
New York, New York 10018
Phone: (212) 218-5500
Fax: (917) 344-1210
Email: pwalker@seyfarth.com
*Attorneys for Deloitte & Touche LLP and Deloitte LLP*